UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

---

RICHMOND MATERIAL COMPANY

CIVIL ACTION NO. 06-557
ADMIRALTY
FED. R. CIV. PRO. 9(H)

VERSUS

THE DREDGE LA CONCHA,
*IN REM*, and CHARLES T. NEWLIN,
INDIVIDUALLY

JUDGE DONALD E. WALTER

---

## MEMORANDUM RULING

Plaintiff, Richmond Material Company ("Plaintiff"), filed suit[1] on December 14, 2006 against The Dredge La Concha, *in rem*, and Charles T. Newlin to recover ownership of the Dredge La Concha ("the Dredge") pursuant to Rule D of the Supplemental Rules for Certain Admiralty and Maritime Claim or, in the alternative, to establish a maritime lien over the Dredge pursuant to Rule C.[2] [Rec. Docs. 1, 106]. Plaintiff also asserted claims for breach of contract, breach of fiduciary duties and wrongful conversion. *Id.* The same day, the Court issued a warrant for the arrest and seizure of the Dredge. [Rec. Doc. 4]. On December 22, 2006, Quimicos Amibex S.A. de C.V. ("Quimicos"), a Mexican entity primarily owned by Defendant

---

[1] Gulf Coast Shell & Aggregate LP ("Gulf Coast") initially filed the lawsuit on December 14, 2006. [Rec. Doc. 1]. However, on October 16, 2008, the suit was dismissed because Gulf Coast lacked authority to proceed in the name of the limited partnership. *See* Rec. Doc. 97. On November 13, 2008, the Court reinstated the case and allowed Plaintiff, a general partner of Gulf Coast, to file an amended complaint asserting a derivative action on behalf of Gulf Coast. *See* Rec. Docs.103, 106.

[2] Plaintiff's Rule C claim was dismissed at trial as a matter of law. *See* Trial Tr. Day 1, p. 254 (relying on *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1207-08 (5th Cir. 1978).

Page 1

Newlin, intervened and filed a claim asserting an ownership interest in the Dredge. [Rec. Doc. 7]. Defendant Newlin and Quimicos (collectively "Defendants") then filed a counterclaim against Plaintiff asserting Quimicos was the rightful owner of the Dredge and a claim for tortious interference with a business relationship. [Rec. Docs. 26-27]. In the alternative, Defendants sought to establish a maritime lien over the Dredge and to recover for the necessaries provided to the Dredge. *Id.* On April 24, 2007, after conducting a hearing to determine the value of the Dredge, the Court set security in the amount of $750,000. [Rec. Doc. 40]. Thereafter, Quimicos filed a bond to secure the release of the Dredge. [Rec. Doc. 41].

A bench trial was held on March 31 and April 1, 2009. At the end of the trial, the record was left open for thirty (30) days in order for Defendants to find Dean Koy, a party to the transactions at issue, and submit his deposition testimony. After thoroughly reviewing all the evidence and testimony presented, in addition to the post-trial briefs submitted by the parties, the Court now renders judgment in favor of Plaintiff for the reasons set forth below.

I.   **JURISDICTION**

Rule D of the Supplemental Rules for Certain Admiralty and Maritime Jurisdiction provides:

> In all actions for possession, partition, and to try title maintainable to the course of the admiralty practice with respect to a vessel, in all actions so maintainable with respect to the possession of cargo or other maritime property, and in all actions by one or more part owners against the others to obtain security for the return of the vessel from any voyage undertaken without their consent, or by one or more part owners against the others to obtain possession of the vessel for any voyage on giving security for its safe return, the process shall be by a warrant of arrest of the vessel, cargo, or other property, and by notice in the manner provided by Rule B(2) to the adverse party or parties.

The remedies available under Rule D are available only if the district court has admiralty

jurisdiction over the action. To invoke admiralty jurisdiction in a contract dispute, the underlying contract must be a maritime contract. *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992). A maritime contract is a "contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment." *Id. (citing Thurmond v. Delta Well Surveyors*, 836 F.2d 952, 954 (5th Cir. 1988) and *quoting Benedict on Admiralty*, § 183, at 11-6 (7th ed. 1985)). "[T]he mere fact that a ship is involved will not bring the cause within the jurisdiction of the admiralty court." *Richard Bertram & Co. v. The Yacht Wanda*, 447 F.2d 966, 1971 A.M.C. 1839 (5th Cir. 1971). Rather, admiralty jurisdiction depends upon the subject matter, the nature and character, of the contract. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986), *citing North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co.*, 249 U.S. 119, 125 39 S.Ct. 221, 223 (1919).

Defendants contend the Court is unable to adjudicate this matter because a suit alleging a breach of contract for the sale of a vessel does not invoke admiralty jurisdiction. *See, e.g., The Yacht Wanda*, 447 F.2d at 967-68 ("whether this suit is viewed as one to enforce a security interest or mortgage on a vessel, a suit to try or quiet title, a suit for breach of a contract of sale, or a suit upon a contract to construct a vessel, it is not within the admiralty jurisdiction of this Court."); *see also, Coutsodontis v. M/V Athena*, 2008 WL 4330236 (E.D.La 2008), *aff'd*, 2009 WL 1688460 (5th Cir. 2009) (wherein the plaintiff acknowledged no "formal" contract existed between the parties). However, Defendants mischaracterize the nature of this action as one based solely on contract. Although Plaintiff does allege Defendant Newlin breached a contract to transfer the Dredge to Grupo, Plaintiff also alleges Gulf Coast "is the only entity that should have any legal title to and right

of possession" of the Dredge,[3] that Defendant Newlin breached a fiduciary duty owed to Gulf Coast by refusing to transfer ownership of the Dredge to Grupo, and that he wrongfully converted the Dredge for his own benefit. [Rec. Doc. 106]. As the Fifth Circuit noted in *J.K. Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F.2d 44 (5th Cir. 1980):

> [Defendant's] reliance on *The Yacht Wanda* is misplaced. That case involved a pure and simple dispute between a vessel manufacturer and buyer concerning a contract for construction and delivery of a vessel. That case did not involve an allegation by the plaintiff of ownership, right to immediate possession, an unlawful taking and detention by defendant and damages caused to the vessel by such tortious conduct by defendants, as in this case.

*Id.* at 47; *see also, Elmwood Dry Dock & Repair v. H&A Trading Co., Ltd.*, 1997 WL 781298, *15 (E.D.La. 1997) (wherein the district court found admiralty jurisdiction existed over the plaintiff's tort claims—breach of fiduciary duty, fraud, conversion, and tortious interference with contract—where the alleged injuries stemmed from the "condition, repair, management and operation of the vessel"). Accordingly, Defendants arguments against jurisdiction are without merit.

## II. FINDINGS OF FACT

Gulf Coast Shell & Aggregate LP ("Gulf Coast") is a limited partnership that engages in the business of bulk materials and aggregates which it imports from Mexico to the United States for construction. [Rec. Doc. 1]. Plaintiff Richmond Materials Co., which is controlled by Roy Beken ("Beken"), and Dean Koy ("Koy") are the limited partners of Gulf Coast.[4]

---

[3] *See Cary Marine, Inc. v. M/V Papillon*, 701 F.Supp. 604, 606 (N.D. Ohio 1988), *aff'd*, 872 F.2d 751 (6th Cir. 1989) ("a party seeking to arrest a vessel under Rule D must have legal title or a legal claim to possession.").

[4] Plaintiff and Koy each own 49 percent of Gulf Coast as limited partners. Gulf Coast Shell & Aggregate Co., a corporation equally owned by Plaintiff and Koy, owns the remaining two percent as a general partner. *See* Rec. Doc. 103.

In 2000, Defendant Newlin incorporated a Mexican entity, Grupo Triad Meridian S.A. de C.V. ("Grupo"), for the purpose of locating oyster shell deposits near Tampico, Mexico and to obtain permission from the Mexican Government for their harvest. [Rec. Doc. 27; Stip. 1]. In the spring of 2002, Dean Koy purchased an interest in Grupo from Newlin and jointly funded the project with Newlin.[5] In August of 2003, Beken purchased five percent of Grupo from Newlin and Koy for $250,000. [Trial Tr., Day 1, p.18, 171; Stip. 3]. Two months later, Newlin obtained a "Titular Concession" for Grupo, an irrevocable grant of title for ten years, to approximately 35 square kilometers of oyster shell. *Id.* at p.18-19, 172; Stip. 3. Thereafter, Beken purchased an additional 20 percent of Grupo from Newlin for $2.5 million dollars, $500,000 cash and a $2 million promissory note. *Id.* at p.21, 181-82; Ex. 1.

While preparing to set up the dredging operations for Grupo, Newlin, Beken and Koy agreed Gulf Coast would be the exclusive U.S. distributor for the oyster shells and would provide the necessary funds for the purchase of a dredge, dredging equipment, and refurbishment. *Id.* at p. 22.

A suitable dredge, *La Concha*, was located at Weeks Marine in Houma, Louisiana and a purchase agreement was negotiated. *Id.* at 23, 184. Gulf Coast wired $300,000 (the purchase price) to Weeks Marine.[6] [Stip. 9]. However, in the Memorandum of Agreement ("MOA") for the sale of the dredge, Weeks Marine restricted the use of the dredge in United States' water and prohibited the sale of the dredge to a domestic entity. *Id.* at 26. Consequently, the parties agreed to put the title to the dredge in the name of Industrias Pasmoso S.A. de C.V. ("Industrias"), a Mexican entity

---

[5]Milton Koy, the father of Dean Koy, also purchased an interest in Grupo; however, the date of this purchase and the size of that interest is not clear.

[6]Gulf Coast paid the $300,000 to Weeks Marine after it received a substantial loan from Sterling Bank for such purposes.

Page 5

controlled by Newlin. [Stip. 8]. They intended to eventually transfer the title to the dredge to Grupo, after the dredge was refurbished and appraised at a higher value. The parties anticipated that Grupo would be able to obtain a significantly higher loan amount in Mexico after the refurbishment of the dredge than if title was initially placed in Grupo's name.[7] *Id.* at 44, 210; Trial Tr., Day 2, p.16; Koy Depo. p. 11. The loan was intended to be used for a number of purposes, including financing the dredging operation in Mexico, paying off the expenses on the dredge and the refurbishment, and paying off Grupo's debts.[8] *Id.* at 46; Koy Depo. p. 11.

The dredge was towed to Aransas Pass for repair and refurbishment. *Id.* at 28. Gulf Coast expended approximately $420,000 for the refurbishment of the dredge. [Plaintiff's Ex. 6]. Although some of the payments for the repairs were not made directly by Gulf Coast, all payments were made by companies that were controlled by either Beken or the Koys and were made on behalf of Gulf Coast. [Trial Tr. Day 1, p.29-31]. At some point during the refurbishing, Newlin unilaterally transferred title to the dredge from Industrias to Quimicos Amibex S.A. de C.V. ("Quimicos"), a Mexican entity primarily owned by Defendant Newlin. [Stip. 13]. From that point, Newlin bore the expenses finishing the repairs to the dredge until it was ready to travel to Mexico to work.[9] [Trial Tr., Day 1, p.199]. The dredge was then transferred from Quimicos to another Mexican entity, Dragados Mundiales Del Caribe. [Stip. 14].

---

[7] Beken testified that had the title been placed in Grupo's name at the time of purchase, the appraisal would have come in significantly lower based on the cost records of the purchase. [Trial Tr., Day 1, p.44].

[8] All of the shareholders of Grupo, including Newlin, Beken, and Koy, were owed money by Grupo. [Koy Depo. p.21].

[9] Newlin testified that he also contributed to the expenses of the refurbishment prior to the transfer, but the exact amount cannot be determined from the evidence adduced at trial.

Plaintiff now seeks to recover the $750,000 security bond. *See Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1342 (11th Cir. 2005) (if a bond is filed with the registry of the Court to secure the release of a vessel, the bond becomes the substitute for the vessel) on the ground that Defendant Newlin lacked the authority to transfer title to Quimicos and wrongfully converted the dredge for his own benefit.

### III. CONCLUSIONS OF LAW

#### A. Claims Regarding the Right to Ownership and/or Possession of the Dredge

An owner who has been wrongfully deprived of his right to possession of a vessel is entitled to initiate a Rule D action to secure return of the vessel. *William P. Brooks Constr. Co., Inc. v. Guthrie*, 614 F.2d 509, 510-511 (5th Cir. 1980). The party seeking possession must have legal title *or* a legal claim to possession. *Cary Marine, Inc. v. M/V Papillon*, 701 F.Supp. 604, 606 (N.D. Ohio 1988), *aff'd*, 872 F.2d 751 (6th Cir. 1989) (emphasis added). Several courts have held that a rightful owner need not show that it had prior possession to prove; rather, construction possession will support a Rule D claim. *See Odyssey Marine Exploration, Inc. v. The Unidentified*, 2006 WL 3091531, *3 (M.D. Fla. 2006) (stating that "actual or constructive possession of the property" is necessary to establish a claim of ownership).

Whether Plaintiff has a legal claim to possession of the dredge (substituted by the bond) depends on the purpose and terms of the parties' agreement when they acquired the dredge. It is undisputed that Gulf Coast paid the $300,000 purchase price to Weeks Marine and that title to the dredge was placed in the name of Industrias.[10] But the parties strongly disagree as to the *reason* title

---

[10] In their post-trial brief, Defendants again assert that Plaintiff has no legal claim to the dredge because neither Gulf Coast nor Richmond Materials owned the dredge or were intended to own the dredge. But as this Court already recognized, actual possession is not required to

Page 7

was in the name of Industrias at that time instead of placing title directly in the name of Grupo.

Defendant Newlin claims Plaintiff does not have a valid claim to possession of the dredge because, when title was placed in the name of Industrias, the dredge was pledged as security for the $2 million debt owed to Newlin by Beken for the additional shares in Grupo. Under Texas law, a pledge is defined as a "transaction by which collateral security is delivered by the debtor and accepted by the creditor." *Bullock v. Foster Fathead Co.*, 631 S.W.2d 208, 210 (Tex. App.–Corpus Christi 1982) (quoting *Smith v. Blancas*, 87 S.W.2d 781, 784 (Tex.Civ.App.–El Paso 1935, *writ ref'd*). "The character of the transaction between the parties is to be determined by their *intention*; it matters not what language was used or what the form of the transaction was; if it was *intended* to secure the payment of money, it must be construed as a pledge." *Id.* (citing 51 Tex.Jur.2d Secured Transactions, § 40, p.88) (emphasis supplied).

In the case at bar, the agreement was made with few, if any, formalities. There is not a written contract or other written document that expresses the intent of the parties. Rather, the parties orally agreed that title to the dredge would be placed in Industrias and transferred to Grupo after the refurbishment was complete, and they simply shook hands to indicate their consent to the agreement. The Court finds that the fatal flaw in Defendant Newlin's argument is the lack of *intent* evidencing an agreement that the dredge was to be used as security for the $2 million debt. Beken testified it was never discussed or even brought to his attention that the dredge would be pledged to Newlin. [Trial Tr. Day 1, p.34]. Koy testified that his intention in placing title to the dredge in Industrias was

---

prevail under a Rule D claim; "constructive possession" is sufficient to establish a claim of ownership. *See Offshore Express, Inc. v. Bergeron Boats, Inc.*, 1978 A.M.C. 1504 (E.D.La. 1977) ("the existence of [plaintiff's] power to exercise dominion and control of the structure while at defendant's shipyards and presumably, his intent to so maintain control resulted in an exercise of constructive possession which we deem to be adequate...").

so the dredge could be refurbished and refinanced in the name of Grupo. Once the dredge was refinanced, he understood that "some of that money would be used to either pay off or buy out Mr. Newlin." *Id.* at p.46-47. As a result, he "assumed" the dredge was acting as security for Newlin's debt, but admits there was no written agreement and does not remember any discussion where the parties expressed their *intent* to pledge the dredge to Newlin as security for the debt.

The Court concludes that the parties placed title to the dredge in the name of Industrias with the intention of refurbishing the dredge and getting a new appraisal, so that Grupo would be able to obtain significantly more financing than if title was initially placed in Grupo's name. The Court does not agree, however, that Beken, Koy and Newlin had a "meeting of the minds" and intended to pledge the dredge to Newlin (via Industrias) as security for the $2 million debt.[11] By virtue of their agreement, Newlin had a duty to hold title to the dredge in the name of Industrias on behalf of Gulf Coast until the dredge was refurbished and Grupo could obtain financing. Accordingly, because the Court finds he did not have the authority to unilaterally transfer the dredge to Quimicos, Defendant Newlin wrongfully deprived Plaintiff of its right to possession of the dredge.

B. **Tortious Interference with a Business Relationship**

In his Answer, Defendant Newlin asserted a counterclaim against Plaintiff for wrongful seizure and tortious interference with a business relationship. [Rec. Doc. 27]. Newlin claims that, as a result of the alleged wrongful seizure, he lost a contract for $3.8 million in the Turks and Caicos Islands with a potential profit of between $1.6 million and $1.85 million. [Rec. Docs. 27, 137]. He

---

[11]The Court also notes that Newlin was a practicing lawyer for several times and that he, Beken, and Koy routinely engage in sophisticated business dealings. The fact that no written agreement, nor even an informal reference in correspondence between the parties, is further evidence that there was never an agreement whereby the dredge would be pledged as security or collateral for the Grupo debt.

Page 9

seeks to recover damages equal to the amount of profit he would have received had the dredge not been seized.

Under Texas law, the ability to recover lost profits "does not require that the loss be susceptible to exact calculation." *Amigo Broadcasting, LP v. Spanish Broadcasting Sys., Inc.*, 521 F.3d 472, 483 (5th Cir. 2008) (quoting *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam). The injured party must, however, be able to establish the amount of loss "by competent evidence with reasonable certainty." *Id.* Damages for lost profits cannot be based on evidence that is "speculative, uncertain, contingent, or hypothetical." *Id.* (quoting *Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006).

Newlin has not established a right to recover lost profits based on the Turks and Caicos contract because, as discussed above, the seizure of the dredge was not "wrongful." Furthermore, his estimate of lost profits is not supported by any objective facts, figures, or data from which the amount of lost profits may be reasonably ascertained. *See Szczepanik*, 883 S.W.2d at 649. The dredging business was new and there are no historical profits to use as a reference. In addition, the dredge was still undergoing extensive refurbishment at the time Newlin allegedly negotiated the contracts. Consequently, the Court finds Defendant Newlin's estimate for lost profits is merely speculative and cannot be proven within any degree of reasonable certainty.

## IV. DAMAGES

It is undisputed that Gulf Coast paid $300,000 for the purchase of the dredge. Plaintiff concedes the towing of the Dredge from Houma to Aransas Pass and refurbishment of the dredge were paid by both Plaintiff and Defendant, in the amounts of $430,749.00 and $203,000.00, respectively, for a total of $633,749.00. [Rec. Doc. 138; Plaintiff's Ex. 6]. However, these expenditures only increased the value of the dredge by $450,000, to a total value of $750,000, as

determined by the Court after the hearing to set security. [Rec. Doc. 40]. The Court agrees with Plaintiff that a fair and equitable way to recognize the parties' contributions is on a prorata basis by comparing the amounts invested to the increased value of the vessel. A prorata analysis reflects that the additional $450,000 increase to the value of the dredge can be allocated $305,550 in favor of the Plaintiff and $104,450 in favor of the Defendant.

Accordingly, **IT IS HEREBY ORDERED** that judgment be rendered in favor of Plaintiff, Richmond Material Company, in the amount of $605,550. All counterclaims asserted by Defendant Newlin and Claimant Quimicos are **DISMISSED WITH PREJUDICE**. A judgment consistent with this Memorandum Ruling will issue herewith.

*[signature]*
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE